**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZEV LAGSTEIN, M.D.,<br>  *Plaintiff-Appellant /*<br>  *Cross-Appellee*,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT<br>LLOYD'S OF LONDON, a foreign<br>insuring entity,<br>  *Defendant-Appellee /*<br>  *Cross-Appellant*. | Nos. 11-17369<br>11-17460<br><br>D.C. No.<br>2:03-CV-01075-<br>GMN-LRL<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted
May 14, 2013—San Francisco, California

Filed August 5, 2013

Before: Richard R. Clifton and Carlos T. Bea, Circuit
Judges, and Kevin Thomas Duffy, District Judge.[*]

Opinion by Judge Duffy

---

[*] The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Attorney's Fees / Arbitration Award

The panel reversed and remanded the district court's ruling on interest and attorney's fees, and affirmed the district court's denial of a request for return of an alleged overpayment to plaintiff from an escrow fund in an diversity action involving an arbitration award arising from a plaintiff's claim on a disability insurance policy.

The panel held as a threshold issue that the decision of the arbitrators—which awarded the plaintiff interest on contract damages—did not foreclose the district court from awarding interest on the remaining portions of the arbitration award. The panel held that under Nevada law plaintiff was entitled to collect post-award, pre-judgment interest on the non-contract damages portions of the arbitration award from the date of the awards through the date of payment. The panel also held that plaintiff was entitled to collect post-judgment interest on his post-award, pre-judgment interest from the date of this opinion until the date the insurer pays the interest. The panel remanded with instructions to award plaintiff attorney's fees pursuant to Nev. Rev. Stat. § 689A.410(5). Finally, the panel held that the district court did not impermissibly overpay plaintiff when it released funds from the escrow account and included interest on the contract damages through the date of payment.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Thomas L. Hudson (argued), Osborn Maledon, P.A., Phoenix, Arizona; Charles J. Surrano III and John N. Wilborn, Surrano Law Offices, Phoenix, Arizona; Julie A. Mersch, Law Offices of Julie A. Mersch, Las Vegas, Nevada, for Plaintiff-Appellant/Cross-Appellee.

Evan M. Tager (argued) and Philip Allen Lacovara, Mayer Brown LLP, Washington, D.C.; Joseph M. Rimac, Anna M. Martin, and Kevin G. Gill, Rimac Martin, P.C., San Francisco, California, for Defendant-Appellee/Cross-Appellant.

**OPINION**

DUFFY, District Judge:

After undergoing major heart surgery in 2001, Dr. Zev Lagstein, a nuclear cardiologist, made a claim on a disability insurance policy he had purchased from Certain Underwriters at Lloyd's of London. Lloyd's pussyfooted for years only to eventually deny the claim, so Dr. Lagstein sued in the United States District Court for the District of Nevada. Lloyd's moved to arbitrate pursuant to the policy, and the District Court granted the motion.

Illustrating the maxim "be careful what you wish for," the arbitration was wildly successful for Dr. Lagstein, resulting in a total damages award of over $6 million against Lloyd's, including $4 million in punitive damages. Lloyd's, unhappy with the result of the arbitration it had demanded, successfully moved in the District Court to vacate the award.

Dr. Lagstein appealed, and this court reversed and remanded with instructions to confirm the award. The District Court then confirmed the award but denied Dr. Lagstein's request for interest and attorneys' fees. Dr. Lagstein now appeals the District Court's ruling on interest and attorneys' fees, and Lloyd's cross-appeals requesting return of an alleged overpayment to Dr. Lagstein from a fund which held the award in escrow pending the outcome of litigation. As discussed below, we **REVERSE** and **REMAND** on the issues of interest and attorney's fees, and **AFFIRM** on the issue of overpayment.

## BACKGROUND

In 1999, Dr. Lagstein purchased a disability insurance policy from Lloyd's. Under the policy, Lloyd's agreed to pay Dr. Lagstein $15,000 per month for up to sixty months in the event that Dr. Lagstein became unable to practice medicine due to disability. In 2001, Dr. Lagstein developed heart disease, severe migraine headaches, and other neurological problems. Several physicians who examined him concluded that he was permanently disabled and could no longer practice medicine. Dr. Lagstein made a claim for benefits under the policy.

By early 2002, Dr. Lagstein had yet to receive any benefits or even a decision on his claim, so he went back to work against the advice of his doctors. In September 2003, with still no decision on his claim, Dr. Lagstein filed a complaint in the District Court claiming breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices. Upon Lloyd's motion, the District Court stayed the lawsuit pending binding arbitration required by the policy.

An initial arbitration was held from July 11 to July 14, 2006, and the panel issued a decision on August 31, 2006.  A divided panel concluded that Dr. Lagstein should be awarded the full value of his policy, $900,000, plus interest from "30 days after January 17, 2002" (the date Lloyd's was obligated to rule on the claim under Nevada law), and $1,500,000 for emotional distress.  The panel also concluded that punitive damages would be determined at a separate hearing.

The punitive damages hearing was held on November 21 and 22, 2006, and the same majority of the panel awarded Dr. Lagstein $4 million in punitive damages on December 14, 2006.  The panel also awarded Dr. Lagstein attorneys' fees for the arbitration in the amount of $350,000.00 and one-half of the arbitrators' fees.

Lloyd's moved in the District Court to vacate the arbitration award on several grounds.  The District Court vacated the awards on August 15, 2007, concluding that the size of the awards was excessive and in manifest disregard of the law, and that the punitive damages award contravened public policy and exceeded the panel's jurisdiction.  *See Lagstein v. Certain Underwriters at Lloyds of London*, CV-S-03-1075-RCJ, 2007 WL 2363871, at *2 (D. Nev. Aug. 15, 2007).

Dr. Lagstein appealed.  On June 10, 2010, this court reversed and remanded with instructions to confirm the full awards, holding that the vacatur was not properly based on any of the enumerated grounds upon which a court may vacate, modify, or correct an arbitration award pursuant to the Federal Arbitration Act ("FAA").  *See Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645 (9th Cir. 2010).

After this court issued its opinion, the District Court entered an order confirming the awards on June 16, 2010. However, because the mandate had not yet issued from this court, Lloyd's filed an emergency order to vacate, which the District Court promptly granted on June 21, 2010. Lloyd's petitioned for a panel rehearing and a rehearing en banc, both of which this court denied.

The parties then entered into a stipulation. Lloyd's requested a stay of the mandate while it petitioned the Supreme Court for a writ of certiorari. In exchange for Dr. Lagstein agreeing to the stay, Lloyd's posted a security in the amount of $7.4 million and stipulated that "any undisputed amount to which [Dr. Lagstein] is entitled under the Awards will be distributed to his attorney's trust account from the security following the certiorari process . . . ." The Supreme Court denied Lloyd's petition on December 13, 2010. *Certain Underwriters at Lloyd's, London v. Lagstein*, 131 S. Ct. 832 (2010). On December 14, 2010, Dr. Lagstein moved for release of the funds pursuant to the parties' stipulation. On December 16, 2010, the District Court ordered the clerk to pay Dr. Lagstein $7,315,975.34 from the security posted by Lloyd's, which was comprised of the principal amount of the arbitration awards ($6,943,950.17) plus interest on the contract damages award[1] ($372,025.17).

In the meantime, while awaiting the Supreme Court's decision on Lloyd's certiorari petition, Dr. Lagstein applied to this court for attorneys' fees. On August 24, 2010, this

---

[1] For simplicity, this opinion refers to the $900,000.00 damages awarded for Lloyd's breach of the insurance policy as the 'contract damages' award. The other awards Dr. Lagstein received are collectively referred to as the 'non-contract damages.'

court ordered that the request be transferred to the District Court. On January 5, 2011, Dr. Lagstein moved for attorneys' fees in the District Court. On January 6, 2011, Dr. Lagstein filed in this court a Motion to Lift Stay and Issue Mandate Taxing Costs and Request for Instructions in the Mandate About the Allowance of Interest ("Motion to Lift Stay"). The Motion to Lift Stay requested that this court include in the mandate instructions concerning pre- and post-judgment interest. The motion acknowledged, however, that "if [this court] . . . is inclined to have the district court consider the interest issue in the first instance and is inclined to agree that the state rates should apply until the awards are confirmed on remand, it need not specify anything about interest in the mandate . . . ." The following day—January 7, 2011—the clerk issued the mandate, which awarded costs to Dr. Lagstein in the amount of $1,050.40. On January 24, 2011, without awaiting a response from Lloyd's, this court denied Dr. Lagstein's Motion to Lift Stay as moot.

On January 27, 2011, Dr. Lagstein moved in the District Court for confirmation of the arbitration awards and for the court to enter judgment with post-award interest and arbitrators' fees. Lloyd's opposed Dr. Lagstein's motion, and cross-moved for "an order that Dr. Lagstein return the overage of $372,025.17," which is what the District Court had released from the escrow fund as interest on Dr. Lagstein's contract damages. Remarkably, Lloyd's now argued that the interest constituted an impermissible revision of the arbitration award, even though it had earlier stipulated to that method of interest calculation.

The District Court issued the order that is the subject of this appeal on September 15, 2011, *see Lagstein v. Lloyd's Underwriter at London*, 2:03-CV-01075-GMN, 2011 WL

4356517 (D. Nev. Sept. 15, 2011), and separately entered judgment confirming the arbitration award on September 23, 2011.[2]  In its September 15, 2011 order, the District Court delineated the three types of interest potentially available to Dr. Lagstein, since the cases cited by the parties use a number of inconsistent terms.  This opinion adopts the same terms as follows:  *Pre-award interest* refers to interest that pre-dates the arbitration award (typically calculated from the date the plaintiff filed the complaint); *post-award, pre-judgment interest* refers to interest that runs from the date of the arbitration award until the court's entry of a judgment confirming the award; and *post-judgment interest* refers to interest that runs after the entry of judgment confirming the arbitration award until the day the award is paid.

Ultimately, the District Court granted in part and denied in part Dr. Lagstein's motion, and denied in full Lloyd's cross-motion.  The District Court held that (i) Dr. Lagstein was not entitled to post-award, pre-judgment interest under Nevada law; (ii) the arbitrators' fees should be split equally between Plaintiff and Defendant; (iii) Plaintiff was not entitled to attorneys' fees because federal procedural rules, rather than state law, apply to the issue of whether attorneys' fees should be granted; and (iv) since the arbitration award provided for interest on the contract damages until payment, the District Court did not overpay Dr. Lagstein when it released him funds pursuant to the parties' stipulation.  Dr.

---

[2] In its September 23, 2011 judgment, the District Court awarded Dr. Lagstein additional interest of $22,396.75.  The District Court reached this amount by calculating 10.75% interest on the $900,000.00 contract damages award from November 23, 2006 through December 20, 2010 (totaling $394,421.92) and deducting the interest Lloyd's had already paid from the escrow fund on December 20, 2010 (which totaled $372,025.17).

Lagstein appealed issues (i) and (iii), and Lloyd's appealed issue (iv).

## DISCUSSION

### I.  Interest

As a threshold issue, the decision of the arbitrators—which awarded Dr. Lagstein interest on the contract damages—does not foreclose the District Court from awarding interest on the remaining portions of the arbitration award.  Courts do not lack authority to award interest where an arbitration award is silent.  *See Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (per curiam); *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769, 794–95 (9th Cir. 2002) (applying same reasoning to attorney's fees), *vacated on other grounds by* 341 F.3d 987, 994 n.11 (9th Cir. 2003) (en banc).  While the arbitrators' explicit award of interest on the contract damages should be respected, their failure to speak on interest otherwise does not constitute a denial of interest on other parts of the award.

### A.  Standard of Review

This court reviews a district court's calculation of interest de novo when, as here, it turns on issues of statutory interpretation.  *AT&T Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996).  In diversity cases such as this one,[3] the court looks to state law to determine the rate

---

[3] Although the FAA "provides a means of judicial enforcement where a controversy has been arbitrated pursuant to a valid arbitration provision and the arbitrator has made an award," it does not "confer jurisdiction on

of pre-judgment interest, while federal law determines the rate of post-judgment interest.  *Northrop*, 842 F.2d at 1155.

## B.  Post-Award, Pre-Judgment Interest

Under Nevada law, Dr. Lagstein is entitled to post-award, pre-judgment interest pursuant to Nev. Rev. Stat. § 17.130. *See Mausbach v. Lemke*, 866 P.2d 1146 (Nev. 1994). Although in *Mausbach* the Nevada Supreme Court held that "absent statutory or contractual authority, a district court in a confirmation proceeding may not add prejudgment interest to the arbitration award," the court in the same breath stated, "our ruling [does not] preclude the district court from awarding post-judgment interest, *commencing from the date of entry of the award itself*." *Id.* at 1150 (emphasis added). On this basis, it is evident that the term "prejudgment interest" as used in *Mausbach* refers to *pre-award* interest (i.e., interest on the arbitration award calculated from the date the complaint was filed) rather than *post-award*, *pre-judgment* interest (i.e., interest from the date of the arbitration award until the date the court enters judgment).  So while *Mausbach* precludes pre-award interest, it permits courts to award post-award, pre-judgment interest running from the date of the arbitration award.

---

federal district courts over actions to compel arbitration or to confirm or vacate arbitration awards, nor does it create a federal cause of action giving rise to federal question jurisdiction under 28 U.S.C. § 1331." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) (internal citations omitted).  Rather, there must be "some other independent basis for federal jurisdiction" in an FAA case, such as diversity jurisdiction.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  The District Court had diversity jurisdiction here since Lloyd's is a foreign corporation and Dr. Lagstein is a citizen of the state of Nevada.  *See* 28 U.S.C. § 133 (2012).

Dr. Lagstein is thus entitled to collect post-award, pre-judgment interest on the non-contract damages portions of the award from the date of the awards (August 31, 2006 and December 14, 2006) through the date of payment (December 20, 2010). This includes post-award, pre-judgment interest on punitive damages because the "trier of fact," in this instance the arbitration panel, "has heard all the evidence," and the amount of damages "can[] be ascertained." *Ramada Inns, Inc. v. Sharp*, 711 P.2d 1, 2 (Nev. 1985). Once the arbitration panel set the amount of punitive damages, Lloyd's could not delay payment so as "to make money during the [confirmation] process on what has been ordered to be paid to the plaintiff." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 605–06 (Nev. 1998). Post-award, pre-judgment interest on the non-contract damages should be calculated "at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions" on July 1, 2006, "plus 2 percent." Nev. Rev. Stat. § 17.130. "The rate must be adjusted accordingly on each January 1 and July 1 thereafter" until the date Lloyd's satisfied the judgment. *Id*. We reverse and remand for the District Court to calculate post-award, pre-judgment interest on the non-contract damages portions of the award accordingly.

## i.   Reform of the Mandate

To the extent the mandate must include instructions on pre-judgment interest to comply with Rule 37(b) of the Federal Rules of Appellate Procedure, we reform the mandate as such. The District Court is directed to enter judgment in accordance with the amended mandate effective September 23, 2011.

### C. Post-Judgment Interest

Dr. Lagstein is entitled to collect post-judgment interest on his post-award, pre-judgment interest from the date of this opinion until the date Lloyd's pays the interest. Post-judgment interest on a district court judgment is mandatory per 28 U.S.C. § 1961. *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973). Post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995). Typically, post-judgment interest is awarded from the date of judgment until the judgment is satisfied. *See id.* But while judgment in this case was rendered on September 23, 2011, it was not until today, as set forth in this opinion, that "plaintiff's unconditional legal entitlement to pre[-]judgment interest was initially established." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 587 (6th Cir. 2002); *see Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990). On that basis, post-judgment interest on the post-award, pre-judgment interest to which Dr. Lagstein is entitled will accrue from today until the date of payment.

### II. Attorney's Fees

This court reviews de novo questions of law concerning entitlement to attorney's fees. *Rickley v. Cnty. of Los Angeles*, 654 F.3d 950, 953 (9th Cir. 2011). State law governs whether a party is entitled to attorney's fees in diversity cases such as this one. *See LaFarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1340–41 (9th Cir. 1986). Nevada law mandates attorney's fees in certain insurance lawsuits. *See* Nev. Rev. Stat. § 689A.410(5). It is the law of the case that section

689A.410 applies to this insurance policy. *See Lagstein*, 607 F.3d at 642, *cert. denied*, 131 S. Ct. 832. Thus, we reverse and remand with instructions to award Dr. Lagstein attorney's fees pursuant to Nev. Rev. Stat. § 689A.410(5).

### III.    Alleged Overpayment from Escrow Account

The District Court did not impermissibly overpay Dr. Lagstein when it released the funds from the escrow account and included interest on the contract damages through the date of payment. The arbitration award of August 31, 2006 provided for interest on the contract damages through the date of payment, and the subsequent award of December 14, 2006 did not alter that. Moreover, Lloyd's actually stipulated to the very method of interest calculation used by the District Court when it released the funds. For Lloyd's to now challenge that calculation as an impermissible overpayment is disingenuous at best. We thus affirm that the District Court did not overpay Dr. Lagstein from the escrow account.

Accordingly, the District Court is instructed to award Dr. Lagstein (i) interest on the non-contract damages in the arbitration awards and (ii) attorney's fees, as set forth above. The court affirms the District Court's payment to Dr. Lagstein from the escrow account, including interest on the contract damages. Costs are awarded to plaintiff-appellant.

**REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.**