In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-2706 & 13-2045

SUSAN GOLDMAN,
Trustee of Goldman Living Trust
U/A/D December 19, 2000,

*Plaintiff-Appellee,*

*v.*

JAMES R. GAGNARD and
MICHELLE GAGNARD,

*Defendants-Appellees.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-08843 — **John W. Darrah**, *Judge.*

ARGUED FEBRUARY 18, 2014 — DECIDED JUNE 27, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This case comes to us with a byzantine procedural history, with a certain *Jarndyce v. Jarndyce,* Dickensian flavor. The litigation has spanned ten years and involves numerous parties, as well as several interlinked proceedings in different tribunals. But the main question

underlying the appeal is clear: can a party wait indefinitely
to try to correct an error by a tribunal, or is it required to do
so in a timely manner? We draw upon common-sense prin-
ciples of waiver and estoppel to conclude that the Defend-
ant-Appellants are long past the logical point at which they
could have moved to correct the alleged error by a California
state court in interpreting the arbitral award.

## I

Defendant-Appellants James and Michelle Gagnard built
a house in Los Altos, California, then sold the home to Plain-
tiff-Appellee Susan Goldman in January of 2004. What could
have been a simple transaction actually spawned five sepa-
rate judicial proceedings over ten years, owing to water
leaks that sprang in the house and patio, causing extensive
property damage. Over the past ten years, Goldman has
sued the Gagnards and the cast of characters involved with
the construction and sale of the house in varying permuta-
tions and in different tribunals. The course of these proceed-
ings is important to the disposition of this case, so we sum-
marize them at some length.

### 1. Contractors' action in California state court

Goldman first filed a civil action in California state court
against the general contractor and subcontractors who built
the property for the Gagnards. During the contractors' ac-
tion, Goldman discovered that the Gagnards had knowledge
of the water leak problems prior to the 2004 sale. Goldman
elected not to bring the claims against the Gagnards in this
action because of the arbitration clause governing the sales
contract (more on that soon). Instead, Goldman settled her
suit with the contractors for approximately $1.9 million in

early 2008, then brought an arbitration proceeding against the Gagnards before the Judicial Arbitration and Mediation Service in April 2008.

### 2. Arbitration between Gagnards and Goldman

The parties' real estate contract provided an arbitration clause stating that "[a]ny dispute arising out of this transaction shall be decided by neutral binding arbitration" and that "the decision of the arbitrator is final and binding on all parties to the arbitration agreement." The arbitration was tried before a retired federal judge, who ruled that the Gagnards owed Goldman damages of $611,875, along with $475,307 in attorneys' fees, as well as $90,178 in costs. The Gagnards argued that the Gagnards' obligation to Goldman should be offset by Goldman's settlement award from the contractors, but the arbitrator denied this argument, asserting that he could not do so because he did not have the contractors before him. Specifically, he stated:

> This, however, is not the forum to determine the proper allocation of the $1.9 million settlement. The contractor and subs are not before the Arbitrator. It is up to Respondents to take the proper legal action in the proper forum to obtain relief in this regard.

### 3. Gagnard-initiated California state action (the *Campi* litigation)

On March 28, 2010, the Gagnards filed a civil action in California state court (referred to also as the "Santa Clara court") against the real estate brokers who had represented Goldman and the Gagnards in the purchase and sale of the property, as well as some of the contractors. Goldman intervened as a plaintiff in that action, seeking to recover the dif-

ference between the actual cost of repairing the home and
the damages she had been awarded to date. The Gagnards
filed an amended complaint naming Goldman as a defend-
ant, and sought declaratory judgment as to whether they
were entitled to an allocation or offset of Goldman's arbitra-
tion award to reflect the general contractor's and subcontrac-
tors' payments to her. Goldman filed a demurrer as to the
setoff claim. ("Under California practice, a general demurrer
to a complaint is the equivalent of a motion to dismiss under
Fed. R. Civ. P. 12(b) in federal practice." *Garner v. UICI*, 508
F.3d 559, 563 n.5 (9th Cir. 2007).) On October 18, 2011, the
Santa Clara court sustained Goldman's demurrer without
leave to amend (or in federal parlance, with prejudice); it
found that the arbitrator's statement on the setoff issue was a
final and binding decision as to the offset question, and
thereby denied the Gagnards' requested setoff. Curiously,
the Gagnards did not appeal this decision. The docket shows
that the *Campi* case was closed almost two years later, on
June 27, 2013, after a conditional settlement.

### 4. The FAA case in California federal district court

While the *Campi* decision on the setoff issue was still
pending, Goldman filed suit in California federal district
court under the Federal Arbitration Act, seeking confirma-
tion of her arbitral award against the Gagnards. The
Gagnards moved for a stay of this confirmation proceeding
until the Santa Clara court decided the setoff claim. The
court allowed the stay. But once the setoff issue was decided
against the Gagnards, the California federal district court
ordered the Gagnards to withdraw the stay motion or ex-
plain why it was not moot. The Gagnards withdrew the stay
request without setting forth any theory of why the motion

was not moot, and Goldman promptly submitted a proposed form of judgment. On October 27, 2011, the district court entered an order confirming the award, finding that the Gagnards had not alleged any grounds under the FAA to vacate, modify, or correct the Arbitration Award and that the court itself had found none. The district court also allowed Goldman to recover prejudgment interest, pursuant to California law.

### 5. The registration proceeding in Illinois federal district court

Finally, in December of 2011, Goldman commenced a registration proceeding against the Gagnards in Illinois federal district court to register her arbitral award, then based on the registered judgment, sought citations to discover and collect assets. The Gagnards moved to dismiss the citations, and the motion was denied by the district court. The Gagnards then moved for reconsideration, and Goldman filed for turnover of certain liquid assets in the Gagnards' possession. The district court issued a written opinion denying the reconsideration motions and granting the turnover order. The Gagnards appealed those orders to us.

After filing that appeal, the Gagnards paid the sum of $1.3 million to Goldman in satisfaction of the judgment. Goldman accepted the payment, and refunded to the Gagnards the money she had collected in excess of the judgment balance. The Gagnards then moved for a dismissal of the citations, and for the court to grant them leave to file a counterclaim against Goldman. The district court held a hearing on December 6, 2012, and granted Goldman's oral motion to discharge all pending citations. The district court

also gave the Gagnards leave to file a counterclaim against Goldman.

On January 3, 2013, the Gagnards filed a "counter-complaint," which contained three claims of relief against Goldman for unjust enrichment. The claims were, respectively:

(1) Goldman was unjustly enriched by a $15,000 payment obtained from a third party as a result of one of her citations, in excess of the judgment balance,

(2) $611,875 of the Gagnards' payment to Goldman was unjust enrichment because it duplicated Goldman's prior recovery from the subcontractors for the same damages, and

(3) The California federal district court lacked subject matter jurisdiction to modify the Arbitration Award to include prejudgment interest.

Goldman moved to dismiss the counter-complaint for failure to state a claim. The district court dismissed the counter-complaint with prejudice. The Gagnards filed a timely appeal.

## II

The Gagnards frame this appeal as an attempt to finally get the setoff issue litigated in a substantive way. But it is perplexing why they waited so long to have the issue litigated. "Although waiver is a flexible concept with no definite and rigid meaning," it is "basically an equitable principle used by courts to avoid harsh results when a party has conducted itself in a way as to make those results unfair." *Shear-*

*son Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 370 (7th Cir. 1978). Our doctrine on waiver acknowledges that a right may be "taken away from its holder as a penalty for failure to assert it in a clear and timely manner." *United States v. Johnson*, 223 F.3d 665, 669 (7th Cir. 2000).

The Gagnards are correct that they were entitled to raise the setoff issue. However, as the arbitrator noted when the issue was presented the very first time, "it [was] up to [the Gagnards] to take proper legal action in the proper legal forum to obtain relief in this regard." And the time to obtain such relief was not unlimited: they were required to do so promptly, or risk waiving or forfeiting the issue, especially because the many related proceedings were interlinked. (The interlinked nature of the proceedings is relevant because, as we have reasoned in enforcing equitable principles like collateral estoppel, we find it important to "promote[] judicial efficiency and prevent[] inconsistent decisions" in multiple litigations involving the same parties. *Donald v. Polk Cnty.*, 836 F.2d 376, 381 (7th Cir. 1988).) And indeed, we endeavor to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses disappeared… . [T]he right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). So it was up to the Gagnards to direct the course of legal dominoes, by pressing the issue in a timely manner before the various tribunals involved.

It appears that the filing of the *Campi* case was the first step in getting this question adjudicated. Many of the parties were before one tribunal, including the Gagnards, Goldman,

and at least the general contractor, who was party to the contractors' settlement. And the Gagnards put the setoff issue squarely before the Santa Clara court. They also requested that the California federal district court wait to confirm the arbitral award until the Santa Clara court decided the setoff issue, acknowledging that the Santa Clara court's decision on the matter would ripple into the related proceedings. So far, so good. Then the California state court considered the setoff argument and, according to the Gagnards, misapprehended the implication of the arbitrator's decision.

We are puzzled by the Gagnards's inaction in the aftermath of the Santa Clara court's decision. California civil procedure does not explicitly provide for appeals from orders sustaining a demurrer, because such orders do not constitute a final judgment. *See* Cal. Civ. Pro. § 904.1. And ultimately, the *Campi* litigation would rage on for almost two full years after that decision, resulting in a partial settlement, not presenting an opportunity for appellate review after the final judgment. But if the *Campi* court's misapprehension was as grave as the Gagnards claim, and since the California federal court was waiting to adopt the California state court's conclusion on this matter, the Gagnards could have petitioned for a writ of mandate. *See* Cal. Civ. Proc. § 1086 (providing the availability of a writ of mandate for "all cases where there is not a plain, speedy, and adequate remedy"); *Kurwa v. Kislinger*, 309 P.3d 838, 844 (Cal. 2013) ("Where unusual circumstances justify it, review of interlocutory judgments may be obtained by petition for writ of mandate … ."). The Gagnards could also have tried to litigate the issue substantively in the California federal district court. The federal district court offered such an opportunity in ordering that the Gagnards explain why their stay motion was not moot, else

withdraw it. By not filing paper before the California district court explaining why the setoff motion had been wrongly decided by the Santa Clara court, the Gagnards intentionally relinquished a clear opportunity to preserve this issue for further review. This decision constituted waiver. *United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver is the "intentional relinquishment or abandonment of a known right") (internal quotation marks omitted). Having squandered this opportunity, as well as whatever opportunity existed in the Santa Clara court, the Gagnards cannot now claim that the lack of substantive litigation on the setoff issue was a fate that was pushed upon them. It was the foreseeable result of their own inaction.

And having failed to act in a timely manner, the Gagnards cannot now try to litigate this issue in the federal district court in Illinois—a tribunal entrusted *not* with sifting through the substantive arguments, but simply with enforcing the judgment entered by the entities that invested significant resources and time in determining which parties owed what to whom. The purpose of 28 U.S.C. § 1963 is to "assist[] judgment creators by making it possible for them to pursue the property of a debtor in satisfaction of a judgment by the ordinary process of levying execution in any district where the judgment is registered." *Juneau v. Couvillion*, 148 F.R.D. 558, 559 (W.D. La. 1993) (alteration in original) (internal quotation marks omitted). "It was enacted so that creditors and debtors would be spared the additional cost and harassment of further litigation which would otherwise be required by way of an action on the judgment in a district other than that where the judgment was originally obtained." *Id.* (internal quotation marks omitted). The Illinois court did not have jurisdiction to substantively "modify or annul" the judgment

of the California federal court. *Bd. of Trs., Sheet Metal Work-ers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000) (stating that because 28 U.S.C. § 1963 allows for a judgment to be registered in multiple districts, "it would not make much sense to allow each of these districts to modify the judgment … potentially in different ways" and asserting that our circuit "is among the majority that require Rule 60(b) motions to be presented to the rendering court"). In short, this is not the proper place or time in which to press the argument.

Through the Gagnards' failure to act, the issue has settled and hardened. Several opportunities to substantively litigate this issue existed, and the Gagnards declined to do so. We decline to belatedly act to correct the alleged misapprehension of the setoff issue by the Santa Clara court.

**III**

The prejudgment interest issue is not a winner for the Gagnards, either. California law allows for awards of prejudgment interest by district courts in confirmation proceedings for arbitration awards. *See* Cal. Civ. Code § 3287 (providing that a party may recover prejudgment interest on an amount awarded when the damages are certain, and the right to recover those damages is vested). In fact, not only does California law allow it, but it seems to be an entitlement; a district court would have erred in *not* awarding that interest. *See SCIE LLC v. XL Reinsurance Am., Inc.*, 397 F. App'x 348, 352 (9th Cir. 2010) (discussing a party's entitlement to prejudgment interest on an arbitration award for fees and expenses under California law, and the district court's error in failing to award prejudgment interest); *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th

Cir. 2004) (stating that California law provides that "pre-judgment interest is available from the date the arbitration panel renders its award"). And it is a well-established concept that "[c]ourts do not lack authority to award interest where an arbitration award is silent… . [The arbitrator's] failure to speak on interest otherwise does not constitute a denial of interest on other parts of the award." *Lagstein v Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2010). The California district court acted permissibly in awarding the prejudgment interest, and the Illinois district court acted correctly in dismissing the Gagnards' argument against the award.

**IV**

We decline to address the arguments regarding the turnover order substantively. "The Constitution limits our jurisdiction to live cases and controversies. A case is moot, and thus falls outside of the judicial power conferred in Article III, if the outcome will no longer settle an active dispute about the parties' rights." *Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014) (citations omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013) (internal quotation marks omitted). Because the Gagnards chose to pay the entirety of the judgment voluntarily, there is not "any effectual relief whatever" we could grant to the Gagnards even if they were to prevail in this argument. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible

for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.") (internal quotation marks omitted). Goldman is no longer seeking the turnover of Michelle Gagnard's discovered assets, so we cannot order Goldman to cease pursuing those assets. Accordingly, we dismiss this portion of the appeal as moot.

**V**

For the reasons stated above, we AFFIRM the judgment of the district court, and DISMISS the appeal of the turnover order.