In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1903
EDDIE R. BRADLEY,
 Plaintiff-Appellant,
 v.

VILLAGE OF UNIVERSITY PARK, ILLINOIS,
an Illinois Home Rule Municipality, and
VIVIAN COVINGTON, Mayor of University Park, Illinois,
in her individual and official capacities,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:15-cv-08489 — Charles R. Norgle, Judge.
 ____________________

 ARGUED DECEMBER 6, 2022 — DECIDED FEBRUARY 3, 2023
 ____________________

 Before ROVNER, HAMILTON, and ST. EVE, Circuit Judges.
 HAMILTON, Circuit Judge. This appeal is a sequel to our de-
cision in Bradley v. Village of University Park, 929 F.3d 875 (7th
Cir. 2019) (Bradley I). The Village of University Park hired
plaintiﬀ Eddie Ray Bradley in 2013 as chief of police and in
2014 renewed his contract for two years. In 2015, after new
2 No. 22-1903

elections changed the balance of political power in the village,
Bradley was ﬁred without notice or an opportunity for a hear-
ing. Bradley brought this suit against the village and its mayor
under 42 U.S.C. § 1983 for ﬁring him without due process of
law in violation of the Fourteenth Amendment. He also as-
serted several state-law claims.
 The district court found in 2016 that Bradley failed to state
a viable procedural due process claim under federal law and
declined to exercise supplemental jurisdiction over the state-
law claims. Dkt. 35 at 1, 3. In Bradley I, we reversed that dis-
missal and remanded the case. 929 F.3d at 899. The village had
conceded that Bradley had a property interest in his job as
chief. Accordingly, ﬁring Bradley without notice or an oppor-
tunity to be heard, we found, would have deprived him of
that property without due process of law. We rejected the dis-
trict court’s view that relief was not available under federal
law on the theory that the due process violation by the mayor
and village board had been “random and unauthorized.” Id.
at 879.
 On remand, the defendants reversed course and argued
that Bradley did not have a property interest in his job. The
district court ultimately agreed with the defendants that they
could reverse course and that Bradley did not have a property
interest. The court granted summary judgment for the de-
fendants on the federal due process claim. The court also
granted summary judgment for the defendants on all state-
law claims. Bradley has again appealed. We again reverse on
Bradley’s federal claim against the village itself.
 In Bradley I, the defendants conceded that Bradley had a
property interest in his job for the purposes of “this case,”
without making any eﬀort to qualify or limit that concession
No. 22-1903 3

or to reserve their ability to dispute the issue later if they lost
the ﬁrst appeal. They should be held to that concession.
 Based on that concession and our decision in Bradley I,
Bradley is entitled to judgment of liability on his due process
claim against the village. We remand the case to determine
relief for Bradley on that claim. We also remand so that the
district court may, if necessary, address Mayor Covington’s
qualiﬁed immunity defense. We aﬃrm the judgment in all
other respects: summary judgment for defendants on all state-
law claims.
 In Part I, we present the undisputed facts, and in Part II
the procedural history of this case. In Part III, we explain how
defendants previously waived the issue of Bradley’s property
interest in his job and why we hold them to that waiver. In
Part IV, we hold that Bradley is thus entitled to summary
judgment as to liability on his federal due process claim
against the village. In Part V, we address the state-law claims,
and in Part VI we address qualiﬁed immunity for defendant
Covington.
I. Undisputed Facts
 The essential facts are not disputed. In 2013, the Village of
University Park convinced Eddie Ray Bradley to come out of
retirement to become the new police chief. Bradley was given
a written employment contract. In October 2014, the village
and Bradley agreed to a new contract with a two-year term,
through the end of 2016. The contract provided for a salary of
$100,000 per year, full medical coverage, vacation time, sick
leave, and a departmental car. If Bradley were terminated
“without cause,” he would be entitled to a “termination fee”
equal to four months’ salary.
4 No. 22-1903

 Soon after a municipal election in 2015, however, the
mayor and newly constituted village board placed Bradley on
administrative leave. Thirteen days later, they ﬁred him sum-
marily, without giving him any notice of reasons or any op-
portunity to be heard. The letter ﬁring Bradley did not try to
justify his ﬁring based on any sort of good cause. It suggested
that he was being ousted by operation of state law because his
employment contract extended his tenure beyond the term of
the village oﬃceholders who had appointed him, citing 65 Ill.
Comp. Stat. 5/3.1-30-5(c) (2006) & 5/8-1-7(b) (1997). Bradley I,
929 F.3d at 880. “This meant, according to the village board,
that Bradley’s appointment as police chief terminated as of
May 15, 2015 without needing a board vote, a statement of
reasons, or a hearing. Bradley responded with a letter de-
manding an opportunity to be heard. He received no answer.”
Id. Bradley soon ﬁled this suit.
II. Procedural History
 Bradley’s access to the federal courts was based on his
claim that defendants had deprived him of a constitutionally
protected property interest—in his job as chief of police—
without due process of law. That Fourteenth Amendment
claim established federal question jurisdiction under 28
U.S.C. § 1331 and allowed Bradley to invoke supplemental ju-
risdiction under 28 U.S.C. § 1367 to bring several state-law
claims. Those supplemental claims included the common-law
theories of defamation, false light invasion of privacy, and
breach of contract, as well as claims under the Illinois Whis-
tleblower Act and the Illinois Wage Payment and Collection
Act.
 A few days before discovery was to close, the district court
ordered the parties to submit memoranda of law addressing
No. 22-1903 5

both the mayor’s qualiﬁed immunity defense and our deci-
sion in Michalowicz v. Village of Bedford Park, 528 F.3d 530 (7th
Cir. 2008). After the parties had briefed those issues, the dis-
trict court dismissed Bradley’s due process claim with preju-
dice. Dkt. 35 at 3. The district court construed that claim as
alleging that defendants’ “actions were ‘random and unau-
thorized’ by law.” Id. at 2, quoting Michalowicz, 528 F.3d at
535, citing Parratt v. Taylor, 451 U.S. 527, 540–41 (1981). Brad-
ley’s termination therefore presented, the district court rea-
soned, one of those unpredictable occurrences where consti-
tutional due process is satisﬁed so long as state laws “provide
for a post-termination hearing.” Dkt. 35 at 2. The Illinois Ad-
ministrative Review Act, the court found, provided Bradley
with an adequate post-deprivation remedy, so that Bradley’s
“choice” not to use the “appellate process available to him”
under that Act was “fatal to his claim in federal court.” Id. at
2–3.
 We reversed in Bradley I, in which defendants conceded
that “Bradley had a protected property interest in his contin-
ued employment,” that “the mayor and the village board are
the policymakers for their municipality,” and that Bradley
had “received no pretermination notice or hearing.” 929 F.3d
at 878. We determined that these points of agreement suﬃced
to prove “a due process claim under § 1983 against the indi-
vidual oﬃcials and the village itself, where the village acted
through high-ranking oﬃcials with policymaking authority.”
Id.
 We explained that Parratt and its progeny had established
a “pragmatic but narrow rule” whereby post-deprivation pro-
cedures may satisfy constitutional due process when “the
deprivation is the result of a ‘random, unauthorized act by a
6 No. 22-1903

state employee.’” Id. at 879, quoting Hudson v. Palmer, 468 U.S.
517, 532 (1984), citing Parratt, 451 U.S. at 541. We explained
further that the Parratt defense has never applied “to em-
ployee due process claims where predeprivation notice and
an opportunity to be heard could be provided in a practical
way.” Id. In Bradley’s case, defendants agreed, “there was am-
ple opportunity for a hearing.” Id. at 878.
 The decision to ﬁre Bradley had also been “made by the
top municipal oﬃcials,” and we had long held “that ‘a com-
plaint asserting municipal liability under Monell by deﬁnition
states a claim to which Parratt is inapposite.’” Id. at 879, quot-
ing Wilson v. Town of Clayton, 839 F.2d 375, 380 (7th Cir. 1988).
We therefore rejected defendants’ theory “that their oﬃcial
action—taken by the village’s highest-ranking oﬃcials with
ﬁnal policymaking authority—should be considered ‘random
and unauthorized’ and thus excused under Parratt.” Id. at 885.
Because Bradley had adequately alleged a due process claim
and defendants could not use Parratt to shield them from lia-
bility, we reversed the judgment of the district court and re-
manded the case. Id. at 899.
 Regarding the issue of a property interest, we addressed
the elements necessary to state such a claim and held that
Bradley had plausibly alleged a violation of his due process
rights:
 The parties agree that Bradley had a protected prop-
 erty interest in his continued employment. They
 agree that the mayor and the village board are
 the policymakers for their municipality on the
 subject. And everyone agrees that although
 there was ample opportunity for a hearing,
 Bradley received no pretermination notice or
No. 22-1903 7

 hearing. Those points of agreement suﬃce to
 prove a due process claim under § 1983 against
 the individual oﬃcials and the village itself,
 where the village acted through high-ranking
 oﬃcials with policymaking authority.
Id. at 878 (emphasis added). We reiterated both holdings in
our conclusion remanding the case:
 Bradley has alleged a due process claim that fol-
 lows the mainstream of due process law for
 public employees with for-cause protection: he
 was summarily ﬁred, without notice or an op-
 portunity to be heard before he was ﬁred (or
 even after he was ﬁred). The village does not dis-
 pute these points. The village’s Parratt defense
 fails because it reads Parratt far too broadly, in a
 way that would conﬂict with Monroe, Zinermon,
 Monell, Patsy, and substantial precedent of this
 court.
Id. at 899 (emphasis added).
 On remand from Bradley I, as noted, the defendants re-
versed course on the issue of a property interest. They sought
and, over Bradley’s strenuous objections, obtained leave to
amend their answer to assert as an aﬃrmative defense that
Bradley had no protected property interest in his job as chief. 1

 1 To be clear, defendants’ allegation that Bradley had no protected

property interest in his job as chief of police is not actually an affirmative
defense. “An affirmative defense is one that admits the allegations in the
complaint, but avoids liability, in whole or in part, by new allegations of
excuse, justification or other negating matters.” Reed v. Columbia St. Mary’s
Hosp., 915 F.3d 473, 477 n.1 (7th Cir. 2019), quoting Divine v. Volunteers of
8 No. 22-1903

 In cross-motions for summary judgment, the parties con-
tinued to debate whether the property interest issue was open
for further litigation after Bradley I. The district court eventu-
ally concluded that we had left the issue open and that Brad-
ley in fact had no property interest in his job. On that basis the
court granted summary judgment for defendants on the fed-
eral due process claim, as well as all state law claims. Bradley
has again appealed.
III. Defendants’ Waiver of the Property Interest Issue
 In this second appeal, Bradley has invoked several doc-
trines to support reversal, including the mandate rule, the law
of the case, waiver, and judicial estoppel. These doctrines of-
ten overlap. See, e.g., Carmody v. Board of Trustees of Univ. of
Illinois, 893 F.3d 397, 407–08 (7th Cir. 2018) (discussing rela-
tionship between mandate rule and law-of-the-case doctrine);
United States v. Husband, 312 F.3d 247, 250–51 (7th Cir. 2002)
(remand does not include issues “waived or decided”). The
most straightforward basis for resolving this appeal is that de-
fendants waived the property interest question in the ﬁrst ap-
peal, so the issue was not within the scope of our remand.
 Waiver is “the ‘intentional relinquishment or abandon-
ment of a known right.’” Henry v. Hulett, 969 F.3d 769, 786 (7th
Cir. 2020) (en banc), quoting United States v. Olano, 507 U.S.
725, 733 (1993). In Bradley I, defendants intentionally and per-
manently abandoned the right to contest Bradley’s property
interest. Their express waiver thus limited the scope of our

America, 319 F. Supp. 3d 994, 1003 (N.D. Ill. 2018). Establishing a property
interest is an essential element of a plaintiff’s affirmative due process case.
A simple denial in an answer should be sufficient to put the element at
issue.
No. 22-1903 9

remand to the district court. See Husband, 312 F.3d at 250
(waived issues are not included within “scope of remand”).
 Whether a particular issue is within or outside the scope
of remand is “determined not by formula,” Husband, 312 F.3d
at 251, quoting United States v. Parker, 101 F.3d 527, 528 (7th
Cir. 1996), but through careful examination of the prior appel-
late proceedings, including: the issues presented, the remand
instructions, the express holdings, the procedural posture,
and the issues that were necessarily resolved either by impli-
cation or waiver. See Flynn v. FCA US LLC, 39 F.4th 946, 954
(7th Cir. 2022) (issues presented); United States v. Adams, 746
F.3d 734, 744 (7th Cir. 2014) (remand instructions); Creek v. Vil-
lage of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998) (express
holdings); In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279,
1291–92 (7th Cir. 1992) (procedural posture and implicit hold-
ings).
 “The gist of the doctrine is that once an appellate court ei-
ther expressly or by necessary implication decides an issue,
the decision will be binding upon all subsequent proceedings
in the same case.” Key v. Sullivan, 925 F.2d 1056, 1060 (7th Cir.
1991) (discussing law-of-the-case doctrine). So “any factors
that limit remand are implicitly taken into account when this
court remands a case.” Husband, 312 F.3d at 250. “[W]hether
an issue was waived on the ﬁrst appeal is an integral and in-
cluded element in determining the ‘scope of remand.’” Id.
When a party explicitly waives an issue, that waiver shapes
the law of the case and the scope of any remand. Put another
way, an issue or argument that a party has waived
10 No. 22-1903

permanently, and not solely for purposes of appeal, is simply
not part of a remanded case. 2
 We review de novo the scope of a prior remand, including
the application of the mandate rule and the law-of-the-case
doctrine. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 795–96
(7th Cir. 2005). Whether a party waived an issue in the course
of a prior appeal is an issue of law that we likewise review de
novo. Husband, 312 F.3d at 250–51. 3

 2 Defendants contend that Bradley waived arguing that the scope-of-

remand doctrine—including the mandate rule, the law of the case, and
waiver—foreclosing his arguing on remand and in this appeal that he had
a property interest. They argue that Bradley’s response to their amended
answer and amended affirmative defenses was untimely, leaving both the
district court and defendants “with the impression that Plaintiff was aban-
doning those averments.” Defendants’ waiver-of-waiver argument is not
persuasive. As they acknowledge, long before their amended filings,
Bradley had made these arguments and the district court had rejected
them. He was not required to repeat himself ad nauseam. And ironically,
defendants themselves waived their waiver-of-waiver argument by fail-
ing to raise it in the district court. See United States v. Morgan, 384 F.3d 439,
443 (7th Cir. 2004) (waiver argument can be waived by party it would
help).
 3 Defendants argue that our standard of review with respect to the

scope of remand should be only for abuse of discretion. The argument, we
believe, misreads the precedents defendants cite. We may remand matters
to a district court for it to exercise its sound discretion, as in the principal
case defendants cite on the point. In Houck ex rel. U.S. v. Folding Carton
Admin. Comm., 881 F.2d 494 (7th Cir. 1989), a dispute had arisen about
funds available in a massive antitrust settlement, beyond those needed to
pay claims and expenses. In an earlier appeal, we had rejected the district
court’s approval of the parties’ plan to use the cy pres doctrine to set up an
“antitrust development and research foundation.” We remanded the case
for a fresh exercise of discretion in applying the cy pres doctrine. The dis-
trict court and the parties tried to circumvent our decision. Id. at 502. Our
No. 22-1903 11

 To frame the issue here, we address in Part A appellate
waiver generally and a critical diﬀerence between waivers by
appellants and by appellees. We then lay out in Part B defend-
ants’ explicit waiver on appeal in Bradley I. In Part C, we ex-
plain why we reject defendants’ arguments for avoiding or
limiting the eﬀects of that waiver.
 A. Appellate Waiver by Appellants & Appellees
 An appellant may waive a non-jurisdictional issue or ar-
gument in many ways, such as by failing to raise the issue or
argument in the district court, either at all or in a timely fash-
ion, by failing to raise it at all in the party’s opening brief on
appeal, by failing to present a developed argument on appeal
that engages with the reasoning of the district court, or by fail-
ing to respond in a reply brief to a new argument raised by
appellee. See, e.g., Williams v. Dieball, 724 F.3d 957, 961–62 (7th
Cir. 2013) (appellant failed to raise argument in district court);
Wilson v. Wilson, 46 F.3d 660, 667 (7th Cir. 1995) (appellant ﬁrst
raised argument in motion for reconsideration); Foster v. PNC
Bank, Nat’l Ass’n, 52 F.4th 315, 319 n.2 (7th Cir. 2022) (opening
brief failed to address several claims); Puﬀer v. Allstate Ins. Co.,
675 F.3d 709, 718–19 (7th Cir. 2012) (arguments may be
waived if “underdeveloped, conclusory, or unsupported by
law”); Continental Western Ins. Co. v. Country Mut. Ins. Co.,
3 F.4th 308, 318 (7th Cir. 2021) (argument waived where ap-
pellant provided no reasons and did not engage with the dis-
trict court’s reasoning); Webb v. Frawley, 906 F.3d 569, 582 (7th

review of the scope of remand from the original appeal was de novo, but
since that remand called for an exercise of discretion, our review of the
district court’s application of the cy pres doctrine was for an abuse of that
discretion, which we found in its refusal to comply with our earlier rever-
sal. Id. at 502–03.
12 No. 22-1903

Cir. 2018) (appellant’s counterarguments waived on appeal
where he “did not respond to [appellee’s arguments] in his
reply brief”).
 An appellant is ordinarily expected to assert any available
grounds for reversal, on penalty of waiver. In some interlocu-
tory appeals, however, a defendant-appellant may be re-
quired to concede some factual or legal points while reserving
her ability to contest them later if the interlocutory appeal is
not successful. For example, a defendant appealing a denial
of qualiﬁed or absolute immunity must often concede facts or
elements in order to obtain interlocutory review at all. E.g.,
Leiser v. Kloth, 933 F.3d 696, 700–01 (7th Cir. 2019) (defendant-
appellant accepted facts in light most favorable to plaintiﬀ for
purposes of interlocutory appeal of denial of qualiﬁed im-
munity); Lojuk v. Johnson, 770 F.2d 619, 620 & n.1 (7th Cir.
1985) (noting that “issue of consent will, of course, be open to
determination at trial” where defendant-appellant physician
had to agree that plaintiﬀ’s treatment was without consent for
purposes of appealing denial of absolute immunity).
 Waiver is not precisely symmetrical for appellees and ap-
pellants. An appellee may also waive arguments by not rais-
ing them in a timely way in the district court, by failing to re-
spond to an appellant’s arguments at all, or by failing to oﬀer
a coherent, supported argument, among other grounds. See,
e.g., Jeppesen v. Rust, 8 F.3d 1235, 1237 (7th Cir. 1993) (appel-
lee’s argument waived as it was not “presented to the district
judge”); Terry v. Gary Community School Corp., 910 F.3d 1000,
1008 n.2 (7th Cir. 2018) (appellee’s counterarguments waived
where appellee did not respond to appellant’s argument);
Bowman v. Korte, 962 F.3d 995, 998 (7th Cir. 2020) (argument
waived where appellees made no “eﬀort to defend the district
No. 22-1903 13

court’s order … and instead, for the ﬁrst time, urge[d]” a dif-
ferent legal theory); McCottrell v. White, 933 F.3d 651, 670 n.12
(7th Cir. 2019) (appellees’ argument encompassed a single
“sentence of their brief on appeal”).
 An important diﬀerence between waiver for appellants
and appellees is that appellees do not waive issues or argu-
ments when they merely fail to assert possible alternative
grounds for aﬃrmance. An appellee may have tactical, strate-
gic, or ﬁnancial reasons to seek to preserve a victory on a nar-
row ground, without wanting to ﬁght all possible theories.
“An appellee cannot waive an argument as easily as an appel-
lant can … .” Saccameno v. U.S. Bank Nat’l Ass’n, 943 F.3d 1071,
1082 (7th Cir. 2019). The “failure of an appellee to have raised
all possible alternative grounds for aﬃrming the district
court’s original decision, unlike an appellant’s failure to raise
all possible grounds for reversal, should not operate as a
waiver” because arguing “alternative grounds for aﬃrmance
is a privilege rather than a duty.” Schering Corp. v. Illinois An-
tibiotics Co., 89 F.3d 357, 358 (7th Cir. 1996). Indeed, even “if
an appellee forgoes a brief entirely, we may still aﬃrm.” Sac-
cameno, 943 F.3d at 1082. 4
 Accordingly, an appellee will often concede certain issues
or elements for purposes of an appeal where an appellant ap-
peals a loss on other grounds. E.g., Stepp v. Covance Cent. Lab.
Servs., Inc., 931 F.3d 632, 634–35 (7th Cir. 2019) (defendant-ap-
pellee accepted that plaintiﬀ’s “discrimination complaints

 4 While we are at it, we also cannot resist pointing out that a party

does not waive a defense or claim by opting not to file a motion for sum-
mary judgment, a motion for judgment on the pleadings, or a motion for
dismissal under Rule 12(b)(6). Filing such motions is not obligatory.
14 No. 22-1903

were protected activities” for purposes of appeal where dis-
trict court had granted defendant summary judgment with-
out reaching merits of retaliation claim); General Auto Serv.
Station v. City of Chicago, 526 F.3d 991, 994, 998–1000 (7th Cir.
2008) (defendant-appellee accepted for purposes of appeal
district court’s assumption that signage was lawful when ﬁrst
created where district court had ruled in favor of defendant
on other grounds).
 B. Waiver in Bradley I
 Under these general principles for appellate waiver, as ap-
pellees in Bradley I, defendants could have signaled that they
were conceding the property interest only “for purposes of
appeal.” If they had done so, they would have left the door
open to dispute that element of Bradley’s case in the event of
a remand. The problem here is that defendants gave no sign
in Bradley I that that was what they were doing, either in their
brief or in oral argument. Their failure to do so amounted to
an explicit waiver of their right to challenge that element of
Bradley’s due process claim.
 Here is how the property interest issue was presented to
us in Bradley I. In his opening brief in that appeal, Bradley ar-
gued that he had a protected property interest based on his
2014 contract and Illinois statutes. Bradley I Pl. Br. at 13–14.
Defendants responded to that argument forcefully and
clearly. They told us that Bradley had wasted his time arguing
the point because it was not disputed: “In this case, the Village
Defendants do not contest that Plaintiﬀ had a protected prop-
erty interest in his employment. Hence, Plaintiﬀ’s discussion
of that topic in his opening Appellant’s brief is superﬂuous.
The only question before this Court is the level of process
due.” Bradley I Def. Br. at 14. At oral argument in Bradley I, we
No. 22-1903 15

conﬁrmed this position with defendants’ counsel, who told us
that the defendants “stipulated” to the property interest in
this court just as they had in the district court.
 Our opinion in Bradley I took defendants at their word. We
wrote: “The parties agree that Bradley had a protected prop-
erty interest in his continued employment.” 929 F.3d at 878.
“The village has conceded that Bradley held a protected prop-
erty interest in his job.” Id. at 881. “As noted, the village con-
cedes that Bradley had a property interest in his job protected
by procedural due process. His protections were not just pro-
cedural but substantive.” Id. at 882.
 C. Defendants’ Counterarguments
 To avoid the consequence of their waiver in Bradley I, de-
fendants oﬀer three distinct arguments. They contend ﬁrst
that when they said they did not contest the issue “in this
case,” they really meant “in this appeal.” We reject that argu-
ment because no evidence supports it. See Hamer v. Neighbor-
hood Housing Servs., 897 F.3d 835, 840 (7th Cir. 2018) (Courts
“look to litigants’ (and their attorneys’) words and actions as
objective manifestations, rather than asking what parties were
thinking when they said or did something.”). The diﬀerences
between a case and an appeal and between stipulating for
purposes of a case and stipulating or assuming a point for
purposes of a particular motion or appeal are not mysteries.
 We were told that the best evidence of this limited waiver
is to be found in defendants’ Bradley I brief. Speciﬁcally, coun-
sel argued that the phrase “in this case” should be construed
to mean only a limited waiver for the purposes of that appeal.
That reading would upend the meaning of the word “case.”
Black’s Law Dictionary deﬁnes “case” as a “civil or criminal
16 No. 22-1903

proceeding, action, suit, or controversy at law or in equity.”
Case, Black’s Law Dictionary (11th ed. 2019). In both laymen’s
and lawyers’ terms, “in this case” means “in this lawsuit.” It
does not mean only “for purposes of this appeal.” There’s a
big diﬀerence between the two.
 Advocates know how to phrase a limited waiver, and we
know how to treat such waivers. E.g., BRC Rubber & Plastics,
Inc. v. Cont’l Carbon Co., 981 F.3d 618, 625 (7th Cir. 2020) (ap-
pellant “agrees for purposes of appeal …”); Stepp, 931 F.3d at
635 (“For purposes of this appeal, [appellee] accepts …”);
General Auto Serv. Station, 526 F.3d at 994 (“Although [appel-
lee] contested this point below, it has not quarreled with the
district court’s assumption for purposes of this appeal.”);
Fuerst v. Clarke, 454 F.3d 770, 772 (7th Cir. 2006) (appellee
“concedes for purposes of this appeal …”); Yorger v. Pittsburgh
Corning Corp., 733 F.2d 1215, 1218 (7th Cir. 1984) (“for pur-
poses of this appeal the parties do not dispute …”).
 In Bradley I, defendants never used any such standard lan-
guage as “for purposes of this appeal” to qualify their conces-
sion. If they had said something like “we stipulate to the prop-
erty interest for purposes of this appeal,” or “we do not con-
test the property interest for these purposes only,” then we
would not ﬁnd permanent waiver. But defendants’ use of the
phrase “in this case,” rather than expressing a limited conces-
sion, conveyed an expansive and total waiver. Defendants
were clear that whether Bradley “had a protected property in-
terest in his employment” was “an issue not in dispute here.”
Indeed, they scorned Bradley’s discussion of the issue in his
opening brief, deriding it as “superﬂuous.” In short, their con-
cession came with no caveat or limitation. We see no basis for
reading one into their arguments in Bradley I.
No. 22-1903 17

 Second, defendants argue that the case came to us in Brad-
ley I in an odd posture that prevented them from disputing
the property interest. In their original answer, defendants had
not denied that Bradley had a protected property interest in
his job, and they had admitted that Bradley had been ﬁred
without any process. They also asserted no fewer than seven-
teen aﬃrmative defenses. Five weeks later, defendants asked
the district court for “leave to ﬁle an amended aﬃrmative de-
fense stating that,” with respect to Bradley’s federal due pro-
cess claim, they “were not required to provide” Bradley with
due process, citing statutes that they contended made Brad-
ley’s contract illegal. The district court did not immediately
rule on that request. It was still open on the docket, at least
formally, when the district court dismissed the case in Sep-
tember 2016, seven months after the motion had been ﬁled.
Dkt. 35 at 4.
 After our remand, defendants tried to take back their ear-
lier waiver in Bradley I. They renewed their as-yet unresolved
motion to amend their aﬃrmative defenses. Referring back to
the request they had made before Bradley I, defendants con-
tended that they had always “wanted to amend their aﬃrma-
tive defenses … to include that [Bradley] had no protected
property interest in his employment.” The district court
granted defendants leave to amend, Bradley moved to strike,
and the parties debated whether our remand allowed further
litigation of the property interest issue. As noted above, the
district court eventually allowed defendants to amend their
answer and to dispute Bradley’s property interest, and ulti-
mately granted summary judgment for defendants on that ba-
sis.
18 No. 22-1903

 Citing cases in which we have said that parties may not, in
eﬀect, amend their pleadings on appeal, e.g., Hamlin v. Vau-
denberg, 95 F.3d 580, 583–84 (7th Cir. 1996) (declining to allow
“appellate counsel to amend the complaint on appeal”), de-
fendants argue that the district court’s earlier failure to rule
on their pending motion to amend prevented them from lim-
iting in Bradley I the scope of their waiver of the property in-
terest element. The argument is a non sequitur. The conclu-
sion simply does not follow from the premise.
 Defendants did not need to “amend their answer” on ap-
peal to preserve the argument. If defendants had actually
wanted to limit the scope of their stipulation that Bradley had
a property interest, nothing prevented them from telling us
so. They would only have needed to inform us that they had
requested leave in the district court to amend and that, pend-
ing resolution of that motion, their concession was only for
purposes of appeal.
 Third, defendants contend that the property interest issue
could not have been decided in Bradley I because the district
court had not reached it in its original decision dismissing the
case. Heading into Bradley I, the district court had not ad-
dressed the property-interest element, ﬁnding it only “not
dispute[d].” Dkt. 35 at 2. Defendants contend that, because
the existence of a property interest had not been argued in the
district court, the issue was not “actually before” this court in
Bradley I. And not being presented to this court, we could not
have decided it.
 For two reasons, this argument is a red herring. To begin
with, although courts of appeals generally hesitate to decide
issues not raised in the district court, there is no hard-and-fast
rule preventing us from reaching such an issue. While it is
No. 22-1903 19

“the general rule, of course, that a federal appellate court does
not consider an issue not passed upon below,” whether a par-
ticular question may be taken up and resolved for the ﬁrst
time on appeal is a matter “left primarily to the discretion of
the courts of appeals, to be exercised on the facts of individual
cases.” Singleton v. Wulﬀ, 428 U.S. 106, 120–21 (1976). Broadly
speaking, such discretion may be exercised “where the proper
resolution is beyond any doubt, or where ‘injustice might oth-
erwise result.’” Id. at 121, quoting Hormel v. Helvering, 312 U.S.
552, 557 (1941) (citation omitted).
 In keeping with these principles, we have exercised our
discretion, for example, “‘to entertain arguments that turn on
pure issues of law,’ particularly arguments that would have
been foreclosed in the district court by binding precedent.”
Allen v. City of Chicago, 865 F.3d 936, 944 (7th Cir. 2017), quot-
ing Hively v. Ivy Tech Community College, 853 F.3d 339, 351 (7th
Cir. 2017) (en banc) (hearing arguments not advanced in dis-
trict court where question was one of law and district court
“would have been powerless to overturn precedent”). We
have allowed argument on waived issues where “‘both par-
ties have briefed and argued [the issue’s] merits,’ and where
‘the beneﬁt of a district court hearing is minimal because
proper resolution of the issue is clear.’” AAR Int’l, Inc. v. Nime-
lias Enters. S.A., 250 F.3d 510, 523 (7th Cir. 2001), quoting
United States v. Brown, 739 F.2d 1136, 1145 (7th Cir. 1984). We
have also chosen to overlook a party’s waiver where that
waiver “has caused no one”—neither the district court, nor
this court, nor any adverse party—“any harm of which the
law ought to take note.” Allen, 865 F.3d at 944, quoting Amcast
Industrial Corp. v. Detrex Corp., 2 F.3d 746, 749–50 (7th Cir.
1993) (considering argument not raised in district court where
20 No. 22-1903

both parties had fully briefed on appeal the issue of pure stat-
utory interpretation).
 But Bradley I, like Singleton, was not such a case. See 428
U.S. at 121. To be sure, in Bradley I perhaps we might have
been willing to exercise our discretion to decide the property-
interest question even though it had not been presented to the
district court. But defendants did not ask us to do that. They
did not tee up that possibility by responding substantively to
Bradley’s contention in his opening brief that he had a prop-
erty interest. Nor did defendants alert us that they wanted to
preserve their ability to litigate the issue in case of a remand.
Instead, defendants scoﬀed at Bradley’s property interest ar-
gument as “superﬂuous.” Defendants’ waiver “was the fore-
seeable result of their own inaction,” not “a fate that was
pushed upon them” by their unresolved motion to amend
their aﬃrmative defenses. See Goldman v. Gagnard, 757 F.3d
575, 580 (7th Cir. 2014).
 In short, no obstacle prevented defendants from disputing
the property interest in Bradley I or even from limiting their
concession to that appeal. It was their own choice, in their
words, to “stipulate” that Bradley had a property interest. De-
fendants now seem at a loss to imagine what they could have
done under the circumstances. The answer is simple: alert us
to their pending motion and reserve the issue by saying that
their concession of a property interest was “only for the pur-
poses of this appeal.”
 Defendants’ “concession” on Bradley’s property interest
was an explicit waiver, unqualiﬁed and permanent. As we
have long made clear, such arguments that are explicitly “by-
passed by the litigants, and therefore not presented in the
court of appeals, may not be resurrected on remand” in the
No. 22-1903 21

district court. Barrow v. Falck, 11 F.3d 729, 730 (7th Cir. 1993);
see also Husband, 312 F.3d at 250 (“[T]his court does not re-
mand issues to the district court when those issues have been
waived or decided.”). Once permanently surrendered, the ar-
gument is no longer available. Barrow, 11 F.3d at 731. Defend-
ants’ explicit waiver created an implicit limit on the scope of
our remand in Bradley I. Litigating this waived issue on re-
mand was not consistent with that opinion.
IV. The Federal Due Process Claim
 With the issue of Bradley’s property interest resolved by
defendants’ waiver, the undisputed facts show that Bradley is
entitled to summary judgment as to liability on his federal
due process claim against the village. Section One of the Four-
teenth Amendment provides that no State shall “deprive any
person of life, liberty, or property, without due process of
law.” As we said in Bradley I, the “basic legal questions pre-
sented by due process cases like this are familiar: ‘(1) is there
a property or liberty interest protected by due process; and
(2) if so, what process is due, and when must that process be
made available?’” 929 F.3d at 882, quoting Simpson v. Brown
County, 860 F.3d 1001, 1006 (7th Cir. 2017). For public employ-
ees like Bradley, “a ‘protected property interest in employ-
ment can arise from a state statute, regulation, municipal or-
dinance, or an express or implied contract.’” Id., quoting Crull
v. Sunderman, 384 F.3d 453, 460 (7th Cir. 2004). “When a public
employee has a property interest in his or her job, the consti-
tutional requirements for predeprivation procedures are well-
established: notice of the proposed deprivation, a statement
of reasons, and an opportunity to be heard in response.” Id.,
citing Board of Regents v. Roth, 408 U.S. 564, 569–70 (1972), and
Perry v. Sindermann, 408 U.S. 593, 602–03 (1972).
22 No. 22-1903

 In this case, defendants in Bradley I conceded that Bradley
had a property interest, and we now reaﬃrm that their waiver
formed an integral part of the law of this case. We thus need
not decide deﬁnitively the source of Bradley’s property inter-
est. To be sure, as we discuss below, Bradley’s employment
contract was void ab initio, so it could not serve as the source
of a federal due process right. But Bradley might have had a
property interest arising out of the Illinois Municipal Code,
which states that “no oﬃcer or member of the ﬁre or police
department of any municipality subject to this Division 2.1
shall be removed or discharged except for cause, upon written
charges, and after an opportunity to be heard in his own de-
fense.” 65 Ill. Comp. Stat. 5/10-2.1-17 (2007) (emphasis added).
In this case, whether the statute’s substantive “for cause” pro-
tection applies to Bradley as chief of police has been rendered
moot by defendants’ waiver. We therefore express no opinion
on this issue of Illinois municipal law. For our purposes in
evaluating Bradley’s federal due process claim, the property-
interest element has been satisﬁed.
 So too has the second element. As in Bradley I, defendants
admit in this appeal that Bradley “received no process at all.”
929 F.3d at 883. The undisputed facts establish that the policy-
makers for the village violated Bradley’s federal due process
rights. He is entitled to summary judgment as to liability on
that claim.
V. State-Law Claims
 The district court granted summary judgment for defend-
ants on all of Bradley’s state-law claims. On appeal, Bradley
challenges only the dismissal of his state-law claims for
breach of contract and under the Illinois Wage Payment and
No. 22-1903 23

Collection Act. We agree with the district court’s dismissal of
those claims.
 As the district court recognized, when Bradley’s employ-
ment contract was executed, “its duration extended beyond
the completion of Mayor Covington’s then ﬁrst term in of-
ﬁce.” Dkt. 132 at 19. Under the Illinois Municipal Code, the
corporate authorities of any municipality cannot “make con-
tracts” with “a municipal manager, administrator, engineer,
health oﬃcer, land planner, ﬁnance director, attorney, police
chief or other oﬃcer who requires technical training or
knowledge” that exceeds the term of the mayor or president
holding oﬃce at the time the contract is executed. 65 Ill.
Comp. Stat. 5/8-1-7(b)(1) (emphasis added). Nor can the “city
council or board of trustees of a municipality … ﬁx the term
of oﬃce” of any appointed oﬃcer beyond “that of the mayor
or president of the municipality.” 65 Ill. Comp. Stat. 5/3.1-30-
5(c). According to the Illinois courts, Bradley’s employment
contract would therefore be deemed “ultra vires and void ab
initio.” Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd.,
318 Ill. App. 3d 478, 251 Ill. Dec. 889, 741 N.E.2d 1067, 1071,
1074 (2000) (aﬃrming dismissal of breach-of-contract claim
against township where employment contract “extended for
a duration longer than the term of the township supervisor”). 5
 Because Bradley’s employment contract was ultra vires, he
lacks “a valid and enforceable contract,” which he would

 5 Contrary to Bradley’s reading of our opinion in Bradley I, we did not

determine in that appeal whether Bradley had a “valid and enforceable
contract.” Rather, we simply acknowledged that defendants’ conduct had
not comported with the contract’s procedural protections. 929 F.3d at 880
(“These actions did not comply with the termination provisions of Brad-
ley’s employment contract[.]”).
24 No. 22-1903

need for his breach-of-contract claim. See Khan v. Fur Keeps
Animal Rescue, Inc., 2021 IL App (1st) 182694, 458 Ill. Dec. 873,
197 N.E.3d 286, 292 (2021); Pepper Constr. Co. v. Palmolive Tower
Condos., LLC, 2016 IL App (1st) 142754, 405 Ill. Dec. 748, 59
N.E.3d 41, 66 (2016). The district court correctly granted de-
fendants summary judgment on Bradley’s breach-of-contract
claim.
 The same logic applies to Bradley’s claim under the Illinois
Wage Payment and Collection Act. To prove a claim under the
Act, a plaintiﬀ must prove “that: (1) the defendant was an
‘employer’ as deﬁned in the Wage Payment Act; (2) the parties
entered into an ‘employment contract or agreement’; and
(3) the plaintiﬀ was due ‘ﬁnal compensation.’” Catania v. Local
4250/5050 of the Communications Workers of America, 359 Ill.
App. 3d 718, 296 Ill. Dec. 161, 834 N.E.2d 966, 972 (2005), quot-
ing 820 Ill. Comp. Stat. 115/2, 5. A valid and enforceable con-
tract is necessary for a common law action for breach of con-
tract, but the Wage Payment and Collection Act requires only
an “agreement,” which the courts interpret more broadly than
a contract. An agreement “requires only a manifestation of
mutual assent … without the formalities and accompanying
legal protections of a contract.’” Id., quoting Landers–Scelfo v.
Corporate Oﬃce Systems, Inc., 356 Ill. App. 3d 1060, 293 Ill. Dec.
170, 827 N.E.2d 1051, 1059 (2005). Still, a plaintiﬀ must “plead
facts showing mutual assent to terms that support recovery.”
Landers–Scelfo, 827 N.E.2d at 1059.
 As evidence of mutual assent, Bradley points only to a
purported acknowledgment by Mayor Covington in her dep-
osition that he “deserved four months’ salary if terminated”
and to the employment contract itself—which was ultra vires.
The quoted testimony does not show mutual assent. Mayor
No. 22-1903 25

Covington did not admit that she believed Bradley was actu-
ally owed four months’ salary upon termination. She merely
acknowledged that the written contract purported to require
“a termination fee equal to four months salary,” saying only,
“I see that.” We therefore agree with the district court that
Bradley could not demonstrate the “mutual assent” necessary
to prove a claim under the Wage Payment and Collection Act.
VI. Qualiﬁed Immunity
 Qualiﬁed immunity shields government oﬃcials like
Mayor Covington from individual liability for civil damages
under 42 U.S.C. § 1983 and similar remedies “insofar as their
conduct does not violate clearly established statutory or con-
stitutional rights of which a reasonable person would have
known.” Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Oﬃcials
“are entitled to qualiﬁed immunity under § 1983 unless
(1) they violated a federal statutory or constitutional right,
and (2) the unlawfulness of their conduct was ‘clearly estab-
lished at the time.’” District of Columbia v. Wesby, 138 S. Ct. 577,
589 (2018), quoting Reichle v. Howards, 566 U.S. 658, 664 (2012).
 For reasons explained above, the undisputed facts estab-
lish that Mayor Covington’s actions violated Bradley’s consti-
tutional right to due process of law. For purposes of her qual-
iﬁed immunity defense, the issue is whether her actions vio-
lated clearly established constitutional law.
 “‘Clearly established’ means that, at the time of the of-
ﬁcer’s conduct, the law was ‘suﬃciently clear that every rea-
sonable oﬃcial would understand that what [she] is doing’ is
unlawful.” Id., quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741
(2011) (internal quotation marks omitted). There need not be
“a case directly on point, but existing precedent must have
26 No. 22-1903

placed the statutory or constitutional question beyond de-
bate.” al-Kidd, 563 U.S. at 741, citing Anderson v. Creighton, 483
U.S. 635, 640 (1987), and Malley v. Briggs, 475 U.S. 335, 341
(1986). In other words, the “rule must be ‘settled law,’ which
means it is dictated by ‘controlling authority’ or ‘a robust con-
sensus of cases of persuasive authority.’” Wesby, 138 S. Ct. at
589–90, quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991), and
al-Kidd, 563 U.S. at 741–42 (internal quotations marks omit-
ted). “It is not enough that the rule is suggested by then-exist-
ing precedent.” Id. at 590. Also, we “must not ‘deﬁne clearly
established law at a high level of generality, since doing so
avoids the crucial question of whether the oﬃcial acted rea-
sonably in the particular circumstances that he or she faced.’”
Id., quoting Plumhoﬀ v. Rickard, 572 U.S. 765, 779 (2014). Under
the Supreme Court’s guidance, we must determine whether it
would have been clear, beyond debate, to an oﬃcial in Mayor
Covington’s position that Bradley had a protected property
interest.
 The district court never reached the issue of qualiﬁed im-
munity. The parties’ appellate brieﬁng on qualiﬁed immunity
has been sparse and seems to rely on materials outside the
record. Whether police chiefs in Illinois municipalities are or
may be entitled to for-cause protection is an important issue
for those municipalities and their police forces. Anything we
might say at this stage and on this record could disrupt Illi-
nois law on the underlying merits. Accordingly, these are cir-
cumstances where we use our discretion not to reach this is-
sue that the district court did not decide. See generally Single-
ton, 428 U.S. at 120–21. 6

 6 We have considered whether the disagreement among the federal

judges who have considered this case supports the mayor’s defense of
No. 22-1903 27

 Conclusion
 We will attempt to leave no room for doubt about the
scope of this remand. First, summary judgment for the village
and Mayor Covington on Bradley’s federal due-process claim
is REVERSED. Bradley is entitled to summary judgment as to
liability on his federal due process claim against the village
itself. Summary judgment for the defendants on all state-law
claims is AFFIRMED. We REMAND to the district court for
further proceedings on damages for Bradley on his federal
claim against the village, on Mayor Covington’s defense of
qualiﬁed immunity, and on such other issues as may arise,
consistent with both this opinion as a whole and our speciﬁc
mandates.

qualified immunity. See generally Wilson v. Layne, 526 U.S. 603, 618 (1999)
(“If judges thus disagree on a constitutional question, it is unfair to subject
police to money damages for picking the losing side of the controversy.”);
Gates v. Khokhar, 884 F.3d 1290, 1303 (11th Cir. 2018) (same). We have not
taken that path here because the premise for the judges’ disagreement on
the Parratt issue was that the mayor and the village board undertook a
supposedly “random and unauthorized” violation of state law. We are
hesitant to hold that a public official may invoke qualified immunity on a
federal constitutional claim precisely because she violated state law. We
also recognize that the issue of the mayor’s qualified immunity may have
limited practical importance to the parties, given the village’s liability on
the claim.