In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2342

THOMAS WALKER,

*Plaintiff-Appellant,*

*v.*

JOHN BALDWIN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 19-cv-50233 — **Iain D. Johnston**, *Judge.*

ARGUED MAY 19, 2023 — DECIDED JULY 26, 2023

Before FLAUM, ROVNER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Thomas Walker, a Rastafarian whose religious beliefs prohibit him from cutting his hair, was an Illinois state prisoner at Dixon Correctional Center when prison officials forced him to remove his dreadlocks. He sued the prison officials, the prison warden, and the director of the Illinois Department of Corrections ("IDOC"), alleging that the defendants violated his rights under the First Amendment Free Exercise Clause and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"). This appeal concerns only Walker's RLUIPA claim, on which the district court granted summary judgment to the defendants. We find that Walker abandoned this claim in the district court and decline to exercise our discretion to review the waived issue on appeal.

## I. Background

On May 25, 2018—several weeks after Thomas Walker arrived at Dixon Correctional Center—Officer Colin Brinkmeier informed Walker at an intake interview that prison security policy prohibited prisoners from maintaining certain "unsearchable" hairstyles like dreadlocks. Walker refused to cut his hair, informing Brinkmeier that he was a Rastafarian and had taken the Nazarite vow of separation, which includes a vow to refrain from cutting his hair. Brinkmeier's sole response was "we'll see." Later that day, Brinkmeier returned with another corrections officer, Lieutenant John Craft, and again ordered Walker to cut his dreadlocks. Again, Walker refused, citing his religious beliefs.

Brinkmeier and Craft disciplined Walker for his disobedience by placing him in segregated housing for several days. Walker submitted an emergency grievance, seeking an accommodation from the prison based on his religious beliefs, but John Varga, the prison warden at the time, denied Walker's request without explanation. On June 1, Brinkmeier and Craft brought a tactical team and mace to Walker's cell and told Walker that if he did not acquiesce, the tactical unit would forcibly remove his dreadlocks. Walker gave in and allowed the prison barber to shave his hair.

Following this incident, Walker began regrowing his dreadlocks. He was able to keep them for three years without any problems. When conducting security checks, prison officers would run their gloved hands through his dreadlocks. At the time IDOC released him from Dixon in July 2020, Walker's dreadlocks were roughly the same length as they had been when he was forced to cut them. According to Walker, many other inmates at Dixon were permitted to wear dreadlocks.

In late 2019, Walker sued Varga, Craft, Brinkmeier, and IDOC Director John Baldwin for violations of the First Amendment and RLUIPA. At the screening stage, the district court held that Walker had a viable § 1983 claim for a violation of the First Amendment and a viable claim for injunctive relief under RLUIPA. It noted, however, that under Circuit precedent, Walker could not seek monetary damages against individual defendants under RLUIPA "because they are not the recipients of federal funds" and therefore dismissed that claim.

The defendants later moved for summary judgment, which the district court granted on all claims. Although the court expressed skepticism regarding "the Defendants' purported justification for the de facto policy of cutting off Walker's dreadlocks," it found that "the only relief available under RLUIPA," namely injunctive relief, was moot because Walker "ha[d] already been released" from IDOC custody. The court also granted the defendants summary judgment on Walker's First Amendment claim on qualified immunity grounds.

Walker timely appealed. He pursues only the RLUIPA claim and seeks only monetary damages from the defendants in their individual capacities.

## II. Analysis

RLUIPA prohibits a "government" from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the "imposition of the burden on that person" is (1) "in furtherance of a compelling governmental interest" and (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. Walker concedes that his injunctive relief claim is moot now that he is out of prison, *see Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012), and that sovereign immunity bars his claims for monetary damages from the defendants in their official capacities, *see Sossamon v. Texas*, 563 U.S. 277, 293 (2011). The question is thus whether RLUIPA authorizes Walker to seek monetary damages from the defendants in their individual capacities.[1]

But this case does not give us occasion to answer the question. In the district court, Walker expressly abandoned his RLUIPA claim and waived any argument that RLUIPA authorizes monetary damages against individual officers. Walker stated, in a footnote in his response to the defendants'

---

[1] Every federal circuit court that has addressed whether RLUIPA authorizes money damages against state officials in their individual capacities has held that it does not. *See Washington v. Gonyea*, 731 F.3d 143, 145–46 (2d Cir. 2013); *Sharp v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012); *Rendelman v. Rouse*, 569 F.3d 182, 186–89 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316, 327–29 (5th Cir. 2009), *aff'd on other grounds*, 563 U.S. 277; *Haight v. Thompson*, 763 F.3d 554, 568–70 (6th Cir. 2014); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Scott v. Lewis*, 827 F. App'x 613, 613 (8th Cir. 2020); *Wood v. Yordy*, 753 F.3d 899, 903 (9th Cir. 2014); *Stewart v. Beach*, 701 F.3d 1322, 1334–35 (10th Cir. 2012); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir. 2007).

motion for summary judgment, "Defendants also violated [RLUIPA], but that act does not include a damages remedy and so the RLUIPA claim is not being pursued." He later wrote: "Plaintiff has agreed to dismiss his claim for injunctive relief provided under RLUIPA now that he is no longer an IDOC inmate. What remains are Plaintiff's First Amendment Free Exercise Clause and Constitutional rights protected by 42 U.S.C. § 1983." Waiver is the "intentional relinquishment or abandonment of a known right." *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc). Indicating such intentional relinquishment, Walker clearly and expressly stated that RLUIPA does not authorize money damages against the defendants and that he was abandoning his RLUIPA claim. Even if that concession alone were unclear, he later reiterated that his only remaining claim was his First Amendment Free Exercise claim.

On appeal, Walker attempts to recharacterize his statements as an "acknowledg[ment of] the case's procedural history and … binding Seventh Circuit authority." But this is not a reasonable interpretation of these footnotes. Nothing in Walker's brief suggested that these footnotes were simply references to the procedural history of the case and the district court's prior dismissal of the monetary damages claim. "Advocates know how to phrase a limited waiver," and we see no basis here for reading in a caveat or limitation that Walker failed to make himself.[2] *See Bradley v. Village of University Park*, 59 F.4th 887, 899 (7th Cir. 2023) (*Bradley II*).

---

[2] Walker was represented by counsel in the district court. Perhaps we would have been more lenient had he been pro se, but we expect lawyers

Walker next argues that he could not have abandoned his RLUIPA claim at summary judgment because the district court had already dismissed the claim at the screening stage. To be sure, there is some merit to Walker's argument. Our Circuit has repeatedly stated that an argument rejected by the district court need not be relitigated throughout the lower court proceedings to be preserved for appeal. *See, e.g.*, *Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 882 (7th Cir. 2018) ("We see little value in requiring plaintiffs and their lawyers to replead and reargue at later steps in the litigation claims or arguments that the district court has already definitively rejected."); *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1002 (7th Cir. 2019) (finding no waiver of the appellant's claim, which had been screened out by the district court, when the appellant did not revisit the dismissed claims at summary judgment or under Rule 60(b)). In accordance with this precedent, if Walker had said nothing about his RLUIPA money damages claim at summary judgment, he could have challenged the district court's dismissal decision on appeal. But that is not what happened here. Rather than staying silent, Walker expressly stated that he was abandoning his RLUIPA claim. He also did not condition his statement on preserving his right to appeal the district court's dismissal ruling. This distinguishes Walker's case from those cited above and suggests waiver.

Our decisions in *Bradley* clarify this point. In *Bradley v. Village of University Park*, 929 F.3d 875 (7th Cir. 2019) (*Bradley I*), a police chief sued his former employer under 42 U.S.C. § 1983 for firing him without due process of law. The district court

---

to understand and make clear the difference between an acknowledgment of the court's prior decision and a concession of that issue.

sua sponte ordered briefing on a particular defense and later dismissed the case on that issue alone. On appeal, the village "conceded that Bradley had a property interest in his job for the purposes of 'this case,' without making any effort to qualify or limit that concession or to reserve [its] ability to dispute the issue later." *Bradley II*, 59 F.4th at 893. During a subsequent appeal, the village "reversed course," contending "that Bradley had no protected property interest in his job as chief." *Id.* at 895. But we "held [it] to" its concession in *Bradley I*, noting that its waiver was "explicit" and "came with no caveat or limitation." *Id.* at 893, 898, 900.

In so holding, we rejected the village's argument that the "odd posture" of *Bradley I* "prevented [it] from disputing the property interest." *Id.* at 900. The village's original answer to Bradley's complaint failed to state that Bradley did not have a property interest in his employment. And while the village moved to amend its answer to make that contention, the district court dismissed the case on a particular defense without ruling on the motion to amend. In the village's view, "the district court's earlier failure to rule on [its] pending motion to amend prevented [it] from limiting in *Bradley I* the scope of [its] waiver of the property interest element." *Id.* We dismissed this argument as a non sequitur, explaining that the village did not need to amend its answer to preserve the argument in *Bradley I*. "If [the village] had actually wanted to limit the scope of [its] stipulation … nothing prevented [it] from telling us so." *Id.*

Similarly, Walker's argument here is a non sequitur. The district court's prior dismissal of Walker's monetary damages claim did not force him to later concede his claim. As explained above, he could have said nothing about the decision,

electing to challenge the district court's decision on appeal
from a final judgment. Or, if he wanted to concede the issue
for purposes of summary judgment, he could have said so
and then litigated the issue on appeal. But Walker chose nei-
ther option, instead affirmatively waiving his claim for money
damages without qualification or limitation. This is waiver.

Finding waiver, however, does not end our inquiry.
Whether a waived issue can be addressed "is one left primar-
ily to the discretion of the courts of appeals, to be exercised on
the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106,
121 (1976). We exercise this discretion "on rare occasions."
*Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir.
2021). But generally speaking, "a federal appellate court is jus-
tified in resolving an issue not passed on below" where "the
proper resolution is beyond any doubt or where 'injustice
might otherwise result.'" *Singleton*, 428 U.S. at 121 (quoting
*Hormel v. Helvering*, 312 U.S. 552, 557 (1941)).

We decline to exercise our discretion to review the waived
issue here. Whether RLUIPA authorizes money damages
against individual officers is a complicated legal issue with
far-reaching implications for prisoners and state prison offi-
cials across the country. Because Walker expressly disclaimed
any reliance on his RLUIPA claim, the defendants did not
fully respond to the argument in their summary judgment
briefing and the district court did not weigh in on the issue.
And although the briefs on appeal have been extensive, the
parties have, at times, confused the constitutional issues, re-
sulting in somewhat cursory analysis on certain points. Be-
cause of the importance of this issue, we decide to wait to rule
on the matter until it is squarely presented before us with the
benefit of a fully developed district court record.

In the meantime, we note some important points to guide future litigants, although we take no position on these issues at this time. Whether a plaintiff can sue individual state officials for money damages under RLUIPA depends on whether RLUIPA authorizes plaintiffs to sue officials in their individual capacities and whether RLUIPA authorizes the recovery of monetary damages. Additionally, RLUIPA is a Spending Clause statute, meaning that any requirements it imposes on recipients of federal funding must be unambiguous. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'"). Putting these two principles together, the text of the statute must clearly contemplate both money damages as a potential remedy *and* suits against officers in their individual capacities for plaintiffs to obtain money damages against individual officers.

In addition to the scope of the statute, RLUIPA, like "[e]very law enacted by Congress[,] must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). We have expressed skepticism regarding whether Congress has the constitutional authority to authorize RLUIPA claims against state officials in their individual capacities. *Nelson*, 570 F.3d at 888.[3] And

---

[3] In *Nelson*, we "decline[d] to read RLUIPA as allowing damages against defendants in their individual capacities." *Id.* at 889. But as Walker correctly points out and the defendants concede, *Nelson* did not decide whether Congress has the constitutional power to authorize individual capacity suits against state officials under RLUIPA. Instead, we invoked the

several circuits have outright held that Congress lacks such authority. *See Washington*, 731 F.3d at 145–46; *Sharp*, 669 F.3d at 154; *Sossamon*, 560 F.3d at 327–29; *Wood*, 753 F.3d at 903; *Stewart*, 701 F.3d at 1334–35; *Smith*, 502 F.3d at 1271–75. *But see Haight*, 763 F.3d at 570. We leave this issue for another day.

### III. Conclusion

For the foregoing reasons, we find that Walker has waived his RLUIPA claim.

AFFIRMED

---

canon of constitutional avoidance to construe what we believed to be ambiguous statutory language to avoid serious constitutional issues. *Id.*